UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| MICHEL MONTES, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | Case No. 1:09-cv-1043 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CARMEN PALMER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, on an aiding-and-abetting theory. On March 14, 2007, the Kent County Circuit Court sentenced petitioner to a prison term of 10-to-20 years, enhanced by his status as a fourth-felony offender, MICH. COMP. LAWS § 769.11. After unsuccessful efforts to overturn his conviction in the state appellate courts, petitioner brought this habeas corpus action.

The *pro se* habeas corpus petition raises two grounds for relief:

I. WAS DEFENDANT DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S: (1) FAILURE TO OBJECT TO THE USE OF TWO CONVICTIONS FOR MISDEMEANOR LARCENY IN A BUILDING TO IMPEACH HIM WHEN HE TESTIFIED; AND (2) FAILURE TO OBJECT TO JURY INSTRUCTIONS ON AIDING AND ABETTING WHICH FAILED TO SPECIFY THAT IT HAD TO FIND THAT DEFENDANT MUST HAVE INTENDED THE COMMISSION OF *ARMED* ROBBERY OR MUST HAVE KNOWN THAT THE PRINCIPAL INTENDED *ARMED* ROBBERY AT THE TIME HE ASSISTED THE PRINCIPAL?

II.  DID A PLAIN ERROR AFFECTING DEFENDANT'S SUBSTANTIAL RIGHTS OCCUR WHERE DEFENDANT WAS DENIED CREDIT FOR TIME SPENT IN JAIL BECAUSE OF HIS INABILITY TO POST BOND?

(Petition, ¶ 14 and attachment B, docket # 1). Respondent has filed an answer to the petition, supported by the state trial and appellate records. Respondent argues that petitioner's habeas corpus claims should be rejected on their merits or under the doctrine of procedural default.

Chief Judge Paul L. Maloney has referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Court. After review of the submissions of the parties and the state-court record, I conclude that petitioner's habeas corpus claims are meritless and recommend that the petition be denied.

**Proposed Findings of Fact**

The state-court prosecution arose from the armed robbery of Jonathan Pataky, an employee of the Bitter End Coffee Shop, on January 16, 2006, at about 3:40 a.m. The prosecution contended that the robbery was committed by Allen Smith who, armed with a knife, robbed Pataky and took money from the coffee shop. The prosecution contended that petitioner aided and abetted the crime by acting as a lookout. Petitioner asserted that he was not present and was not involved in the armed robbery. Trial commenced on August 9, 2006, but ended in a mistrial after the jury was unable to reach a verdict. (The transcript of the first trial is reflected in the present record as docket #s 15-25.)

The second trial commenced before Honorable George S. Buth on January 29, 2007. The victim, Jonathan Pataky, testified that on the night of the event two men entered the coffee shop and demanded money. (Tr. at 35, docket # 12). One man came behind the counter, picked up a knife

from the counter and held it to the victim's neck while taking money from the register. (*Id.*). The second man acted as a "lookout" by standing at the door and watching. (*Id.* at 36-37). Pataky identified petitioner as the lookout. (*Id.* at 37). Pataky recognized petitioner as the man who had entered the coffee shop earlier in the evening to sell DVDs, but was told to leave. (*Id.* at 41-49). Both robbers wore dark denim jackets. (*Id.* at 38). After the men left, police arrived. About 45 minutes after the incident, police conducted a "show-up" on the street, during which Pataky and other witnesses viewed suspects from the back of a police car. (*Id.* at 41-42). Pataky was shown four suspects; he answered "maybe" to all of them. (*Id.* at 41). He was able, however, to identify positively two denim jackets shown to him by police. (*Id.* at 42-44).

The cross-examination of Pataky focused on issues of identification, including the fact that Pataky had not been able to identify petitioner positively in the show-up after the incident occurred. (*Id.* at 50-53).

John Kalinowski was a customer at the coffee shop. In the early morning hours of January 16, 2006, he saw two men enter the premises and heard a commotion coming from the coffee bar area. He looked up and saw one man walking around the end of the coffee bar while the other man stood by the door. He witnessed the first man assault Pataky, menace him with a knife, and demand money from the cash register. (Tr. at 59, docket # 12). He described the second man as a lookout who appeared "intimidating." (*Id.* at 60). Kalinowski called the police after the men left. (*Id.* at 61). Shortly after the incident, police had him participate in two show-ups. (*Id.* at 61-62). Kalinowski testified that he was uncertain of the identity of the suspects at the time, but that he did positively identify two jean jackets shown to him by officers as the jackets worn by the

perpetrators. (*Id.* at 62-63). The best that Kalinowski could say at trial is that petitioner looked similar to the person involved as the lookout. (*Id.* at 64-65).

Joshua Lee Vandenberg was also present in the coffee shop at the time of the robbery. He described events consistent with the testimony of the previous two witnesses. (Tr. at 68-69, docket # 12). Vandenberg described the second man as obviously part of the robbery. (*Id.* at 70). Vandenberg also participated in the show-up that occurred shortly after the robbery. He told officers that he could not really be positive, but he was able to identify the denim jackets worn by the assailants. (*Id.* at 72-73).

Billy Jo Abbott had been dating petitioner for about a month before the incident. (Tr. at 83-84, docket # 12). She described at length the effects of her former addiction to crack cocaine and admitted lying in a previous court hearing, blaming this on her addiction. (*Id.* at 85-88). Abbott testified, over objection, that petitioner was also using crack cocaine at the time. (*Id.* at 87-88). On the night of the robbery, Abbott was home in her apartment, with two young men named Thomas and Donald, whom she described as "little drug dealers." (*Id.* at 95). Petitioner came to Abbott's apartment, followed shortly by the co-defendant, Allen Smith. (*Id.* at 89). She overheard the men talking, after which they left. Approximately twenty to thirty minutes later, petitioner came back, running up the stairs. He purposely broke the light at the top of the stairs. (*Id.* at 89-90). Abbott described petitioner as "in a panic." (*Id.* at 90). He ordered her to get in the house. After a time, Smith knocked on the door. Abbott described him as "foaming at the mouth," and said that his whole body shaking. (*Id.* at 91). Smith left for five minutes, allowing the witness to go to the bathroom. While she was in the bathroom, she heard a lot of noise and then heard petitioner say,

"Here they come," referring to the police. Abbott attempted to open the door for the police, but petitioner began to choke her. She got loose and opened the door for police. (*Id.* at 92-93).

Abbott testified that as police came in, petitioner took off his clothes, put them in a hamper, and lay in bed, pretending that he was asleep. (*Id.* at 93). Abbott testified that both petitioner and Smith were wearing clothes that they had taken earlier from her apartment. She identified the denim jackets that petitioner and Smith were wearing that night. (*Id.* at 94). In addition to putting on the denim jackets before the robbery, petitioner had borrowed a pair of Abbott's gym shoes, which he sprayed with perfume and pepper, to "detour a dog." (*Id.* at 99). Abbott believed that Allen Smith wore the shoes. (*Id.* at 100).

On cross-examination, defense counsel focused on Abbott's addictions, her previous lies under oath, and the inconsistencies between her testimony at the two trials. (Tr. at 104-18, docket # 12).

The next witness was Thomas Patton, who was at Abbott's apartment when petitioner and Smith arrived there after the robbery. He testified that petitioner punched out a porch light. Smith came in and threw a knife into the sink. Petitioner was "running around telling everybody to be quiet," because the police were coming. (Tr. at 124-25, docket # 12). Petitioner said that "they had just robbed a coffee shop on Fulton Street." (*Id.* at 125). Smith got scared and left. The witness told his friend Donald, who was there with him, that they should leave. As they did, they saw police everywhere. (*Id.* at 125). Before petitioner and Smith left the apartment earlier that evening, petitioner had said that he was going to rob a store. (*Id.*). Consistent with the testimony of Abbott, Patton described both petitioner and Smith as being in a highly agitated state after they returned to the apartment. (*Id.* at 126-27).

Donald Henderson was at Abbott's apartment with Patton on the evening of the robbery. Petitioner and Smith were talking about robbing a store. (Tr. at 139, docket # 12). They left, but returned a short time later. (*Id.* at 142). Consistent with the testimony of the other witnesses, Henderson said that Smith was agitated and "drooling" before he left. Petitioner returned, with Smith returning about five minutes later. (*Id.*). Henderson testified that Smith gave some money to petitioner and that he kept some for himself. (*Id.* at 148-49).

Petitioner's alleged accomplice, Allen Smith, had earlier pleaded guilty to armed robbery. Defense counsel asked that Smith's testimony at his plea hearing be admitted into the record. (Tr. at 181-82, docket # 12). Defense counsel acknowledged that portions of the testimony were adverse to his client, as Smith had implicated him in the robbery. Petitioner himself told the court that he desired to have the transcript admitted and acknowledged that he and his counsel had talked about the "pluses and minuses." (*Id.* at 182-83). The guilty plea transcript (*Id.* at 206-15) reflected Smith's admission that he took money from Mr. Pataky at knifepoint. Smith also testified that petitioner, Michael Montes, was involved. He said that the two of them planned the robbery ahead of time and that petitioner entered the business with him and acted as a lookout. (*Id.* at 213-14).

The prosecution offered a tape recording of a police interview with petitioner. Defense counsel objected, because the tape became unintelligible at some point, as a result of low batteries in the recorder. (Tr. at 181, docket # 12). The court overruled the objection, indicating that the tape contained admissions of petitioner and that the objection went to weight. (*Id.* at 180-82). The tape was played during the testimony of Detective Patrick Needham, who interviewed petitioner on the morning after the robbery, after receiving a waiver of *Miranda* rights. (Tr. at 13-15, docket

# 29). The detective testified concerning the technical problems experienced with the recorder, which caused some of the interview to be unintelligible. (*Id.* at 16-17). Thirty-three minutes of the interview were played for the jury, but are not reflected in the transcript. (*Id.* at 18-19).

The remainder of the prosecution's case consisted of testimony by police officers concerning their investigation on the evening of the robbery and the information that led them to focus quickly on petitioner and Smith.

Defense called Leon Forcha, who was in the area at the time of the robbery and saw a large black man run by him. (Tr. at 30-32, docket # 29). He testified that he remembered very little, because he did "a lot of drugs." (*Id.* at 31).

Petitioner testified in his own defense. Defense counsel elicited from petitioner an admission that he had previously been convicted for uttering-and-publishing. (Tr. at 38, docket # 29). Petitioner confirmed Mr. Pataky's testimony that he indeed had tried to sell DVDs at the Bitter End Coffee Shop and that Pataky had told him he could not solicit there. (*Id.* at 44-45). He testified that he left and then went to Kale's Bar to see a friend. His friend was not there, but petitioner encountered Officer Brad Bush, who accused him of selling stolen DVDs. Petitioner testified that he was irate at the accusation. (*Id.* at 47-48). He then went to another bar and drank three beers, leaving at last call. (*Id.* at 48). He returned to Ms. Abbott's apartment. Donald Henderson and Thomas Patton answered the door, indicating that Ms. Abbott was in the bathroom. Petitioner testified that he told them to leave, as he wanted to go to bed with Ms. Abbott. He took off his clothes and got in bed, but she would not join him, and she left the apartment. (*Id.* at 49-51). He fell asleep and was awakened by police. (*Id.* at 51). Petitioner testified that the denim jacket seized by officers from a hamper did not belong to him. He told the officer that it was not his jacket, but

the officer seized it anyway. (*Id.* at 54). He denied any involvement in the robbery and also denied that he even knew Allen Smith. On cross-examination, the prosecutor elicited without objection that petitioner had been convicted twice of larceny in a building, twice of uttering-and-publishing, and once of forgery. (*Id.* at 60-61).

After the parties rested, the court heard final argument. The court then instructed the jury on the charges of armed robbery, the lesser-included offense of unarmed robbery, and accessory-after-the-fact to a felony. (Tr. at 112-29, docket # 29). The court explained that the prosecutor's theory was that petitioner either aided and abetted Smith with armed or unarmed robbery or that he was an accessory to the crime after the fact. (*Id.* at 113). The court explained that these counts were charged in the alternative and that the jury could not convict on more than one count. (*Id.*). After informing the jury of the elements of each of the robbery offenses, the court gave an instruction on aiding and abetting "which applies to each of the counts of either armed robbery or unarmed robbery." (*Id.* at 122). No party lodged an objection to any instruction.

The jury retired for deliberations at approximately 3:46 p.m. and returned a guilty verdict at 8:25 p.m. (Tr. at 129-30, docket # 29).

Petitioner and counsel appeared for sentencing on March 14, 2007. (Tr., docket # 36). At the outset of the sentencing hearing, defense counsel conceded that petitioner was not entitled to credit for 422 days in county jail, because he was on parole at the time of the offense. He nevertheless asked for credit. (*Id.* at 4). Defense counsel raised a number of other factual objections, most of which the court sustained. After hearing allocution, the court noted that petitioner faced a life sentence because of his status as a fourth-felony offender. Nevertheless, the court imposed a sentence of 10-to-20 years. (*Id.* at 10). The judgment of conviction provided that the sentence

would be served consecutively to the sentence for which petitioner was then on parole, with no time credited for the period petitioner spent in pretrial custody.

Petitioner requested and was granted court-appointed counsel to pursue an appeal, in substitution for the retained attorney representing petitioner at trial. On July 2, 2007, appellate counsel moved for a new trial on the ground of ineffective assistance of trial counsel. The court heard the motion on July 27, 2007, and denied it by order entered the same day.[1]

### B. Appellate Proceedings

Petitioner, represented by new appellate counsel, appealed as of right to the Michigan Court of Appeals. His appellate counsel raised the following two claims on appeal.

I. WAS DEFENDANT DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S: (1) FAILURE TO OBJECT TO THE USE OF TWO CONVICTIONS FOR MISDEMEANOR LARCENY IN A BUILDING TO IMPEACH HIM WHEN HE TESTIFIED; AND (2) FAILURE TO OBJECT TO JURY INSTRUCTIONS ON AIDING AND ABETTING WHICH FAILED TO SPECIFY THAT IT HAD TO FIND THAT DEFENDANT MUST HAVE INTENDED THE COMMISSION OF *ARMED* ROBBERY OR MUST HAVE KNOWN THAT THE PRINCIPAL INTENDED *ARMED* ROBBERY AT THE TIME HE ASSISTED THE PRINCIPAL?

II. DID A PLAIN ERROR AFFECTING DEFENDANT'S SUBSTANTIAL RIGHTS OCCUR WHERE DEFENDANT WAS DENIED CREDIT FOR TIME SPENT IN JAIL BECAUSE OF HIS INABILITY TO POST BOND?

---

[1] According to the circuit court docket sheet (docket # 11), a transcript of the motion for new trial was prepared and filed. The record in this case, however, contains neither the transcript nor the order denying petitioner's motion for a new trial. The contents of the motion were gleaned from statements made in the appellate briefs. In any event, all parties appear to agree that the subject matter of the motion for a new trial was the same claim of ineffective assistance of counsel later raised in the appellate courts.

(Defendant-Appellant's Brief on Appeal, found in Court of Appeals record, docket # 31). By unpublished, *per curiam* opinion issued July 15, 2008, the Michigan Court of Appeals analyzed and rejected all grounds for appellate relief. *See People v. Montes*, No. 277211, 2008 WL 2744746 (Mich. Ct. App. July 15, 2008).

With regard to the first claim of ineffective assistance of counsel (failure to object to improper impeachment by misdemeanor larceny convictions), the Michigan Court of Appeals concluded that counsel indeed should have objected, as the prosecutor improperly impeached defendant by asking him about two misdemeanor theft convictions. Turning to the second prong under the *Strickland* standard, however, the court asked whether, but for trial counsel's failure to act, there is a "reasonable probability that the jury would not have convicted him." 2008 WL 2477746, at * 1. The court found that petitioner had not met his burden, in light of the overwhelming evidence that petitioner had indeed participated in the crime. The court found it highly unlikely that an objection to the admittedly improper impeachment would have led to an acquittal. *Id.*

On the second claim of ineffective assistance of counsel (failure to request separate jury instructions on aiding and abetting for armed and unarmed robbery), the appellate court found the claim to be unpreserved for failure to raise the issue in the trial court. The court nevertheless reviewed the issue for clear error. The court noted that the trial court gave the standard jury instruction for aiding and abetting, regarding intent. The court noted that the trial judge "clearly specified" that the instruction applied to both the armed and unarmed robbery charges. There was no indication that the jury was confused by the instructions or did not understand that petitioner was required to have intended the commission of the crime alleged and must have known the other person intended its commission at the time of giving assistance. The court found that the instruction

was not erroneous and fairly presented the issues to be tried sufficiently to protect defendant's rights. The court therefore found that trial counsel was not ineffective for failing to object to the jury instruction as given. *Id.* at * 2.

Finally, the appellate court found that petitioner's claim to 422 days' credit for time spent in jail was both waived and meritless. It was waived because defense counsel conceded at sentencing that defendant was on parole and therefore not entitled to credit for time served. On the merits, the court reiterated that Michigan law did not give petitioner the right to receive jail credit against his new sentence, because that time served in jail would be credited to the sentence on which he was on parole. *Id.* at * 2 (citing *People v. Stead*, 716 N.W.2d 324 (Mich. Ct. App. 2006)). The judgment and sentence were therefore affirmed.

Petitioner filed a *pro se* application for leave to appeal to the state Supreme Court, raising the same grounds reviewed and rejected in the Court of Appeals. (*See* Michigan Supreme Court record, docket # 32). By standard order entered November 25, 2008, the Michigan Supreme Court denied discretionary review.

**Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell*

*v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012)(*per curiam*). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Metrish v. Lancaster*, 133 S. Ct. at 1786-87; *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010).

## Discussion

### A.     Ineffective Assistance of Counsel

#### 1.     Standards

Petitioner asserts that his Sixth Amendment right to the effective assistance of counsel was abridged by two serious errors made by retained defense counsel: failure to object to impeachment by two misdemeanor convictions and failure to object to allegedly deficient jury instructions. The Michigan Court of Appeals decided both claims on their merits, applying the federal standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, the court focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "[T]he defendant must show there is a reasonable

probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA. *See Harrington v. Richter*, 131 S. Ct. at 784; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586–87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Bourne*, 666 F.3d at 414. "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011); *see Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013).

B.     Failure to Object to Improper Impeachment

Petitioner's first claim of attorney error is defense counsel's failure to object to the prosecutor's impeachment by use of two misdemeanor larceny convictions. Under Mich. R. Evid. 609(a), a witness may be impeached with conviction of a crime containing an element of theft, only if the crime is a felony. Furthermore, felony theft convictions, unlike convictions for crimes containing an element of dishonesty or false statement, are subject to a balancing test.[2] On direct appeal, the Michigan Court of Appeals acknowledged that the impeachment was improper and that defense counsel should have objected. The court nevertheless rejected petitioner's Sixth Amendment claim for lack of prejudice. The court found that the evidence against petitioner was strong and that the improper impeachment was unlikely to have affected the verdict.

The decision of the Michigan Court of Appeals easily withstands scrutiny under the "doubly deferential" standard employed by the Supreme Court. The Court of Appeals applied the correct standard under *Strickland* and properly asked whether there is a "reasonable probability" that, but for the deficiency, the fact finder would not have convicted the defendant. 2008 WL 2744746, at * 1; *see Strickland*, 466 U.S. at 694. Jonathan Pataky positively identified petitioner as the lookout, and the testimony of petitioner's former girlfriend, Billie Jo Abbott, clearly implicated him in the robbery. Numerous witnesses identified the denim jackets found at Abbott's apartment as those worn by the robbers. Petitioner made incriminatory statements to Thomas Patton and Donald Henderson both before and after the robbery. Petitioner's accomplice, Allen Smith, admitted during his own plea hearing that he and petitioner planned the robbery in advance and that petitioner acted

---

[2] The Michigan rule is significantly different from Fed. R. Evid. 609, in that the federal rule allows a defendant to be impeached by all felony convictions, subject to a balancing test. The Michigan rule is in some aspects broader and in others narrower than the federal rule.

as lookout. The likelihood that petitioner's impeachment by two misdemeanor larceny convictions had any deleterious effect on the outcome of the trial is exceedingly small. The impeachment consumed only two pages of the trial transcript (Tr. at 60-61, docket # 29) and was done in connection with impeachment for convictions of forgery and uttering and publishing, both of which were proper under Evidence Rule 609(a). The Michigan Court of Appeals determined that petitioner failed to show the required prejudice arising from counsel's failure to object. This determination was eminently reasonable and withstands scrutiny under the deferential standard required under AEDPA.

### C. Failure to Object to Jury Instructions

Petitioner's next claim of ineffective assistance of counsel arises from his attorney's failure to object to allegedly inadequate jury instructions concerning aiding and abetting. Petitioner's position on appeal was that Smith's decision to use a knife was an impulsive one and that the jury should therefore have been instructed separately on aiding and abetting an armed robbery, so that their attention would have been focused on the prosecution's burden to establish that petitioner knew of Smith's plan to use the victim's knife before he picked it up. Appellate counsel argued that defense counsel should have requested an instruction that petitioner could be convicted of armed robbery only if he provided assistance to Smith after he new that Smith was using a knife in the robbery. Appellate counsel cited no federal or state authority to support the proposition that petitioner was entitled to such an instruction under state law. (*See* Defendant-Appellant's Brief on Appeal at 17-18, found in Michigan Court of Appeals record, docket # 31).

On direct review, the Michigan Court of Appeals determined that an objection would have been futile, as the aiding-and-abetting instruction, as given, was sufficient. The court correctly noted that the trial judge specifically charged the jury that the aiding-and-abetting instruction applied to both armed and unarmed robbery. (Tr. at 122-23, docket # 29). One of the elements of aiding and abetting, as charged by the trial judge, was that "the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance." (*Id.* at 123). The court had already told the jury that one of the elements of armed robbery was that the perpetrator possessed a dangerous weapon. (*Id.* at 121). Consequently, the Michigan Court of Appeals was correct in concluding that the instructions as given were clear and appropriately informed the jury that defendant must have either intended the commission of the crime charged or must have known that the other person intended its commission "at the time of giving the assistance." (*Id.* at 123).

In essence, the Michigan Court of Appeals ruled that the instruction as delivered was appropriate under state law and that any objection would have been overruled. A habeas court is bound by such determinations of state law announced by an appellate court on direct review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Even if this court could review this question of state law, the Michigan Court of Appeals clearly was correct, as the instruction was not misleading. Moreover, appellate counsel's theory of aiding and abetting was itself flawed. Michigan law of aiding and abetting does not necessarily require shared specific intent to commit the crime of an accomplice. A criminal defendant can be held liable under an aiding-and-abetting theory if the criminal act of the accomplice was an "incidental consequence which might reasonably be expected to result from the intended wrong." *People v. Robinson*, 715 N.W.2d 44, 49 (Mich. 2006). Thus,

petitioner need not have had a specific intent to commit an armed robbery, as long as his accomplice's use of a weapon was a reasonably foreseeable consequence of the robbery petitioner did agree to commit. Finally, the argument made by appellate counsel was contrary to the strategy of petitioner and his attorney at trial. Petitioner testified that he was not involved in the robbery in any way. Appellate counsel's criticism would have required petitioner to have conceded his involvement in an unarmed robbery but to have argued that Smith unexpectedly used a knife. This was clearly not the case tried in the circuit court.

The Michigan Court of Appeals concluded that the aiding-and-abetting instruction was appropriate under state law and was not misleading. An objection would therefore have been futile. This decision withstands even *de novo* review and is clearly sustainable under the much more deferential standard required by AEDPA.

## II. Failure to Grant Credit For Pretrial Detention

Petitioner's last claim is that the trial judge should have granted him 422 days' credit for time spent in pretrial detention. On direct review, appellate counsel recognized that previous decisions of the Michigan Court of Appeals had rejected this claim, but he asked the court to reverse itself. The Michigan Court of Appeals found that this claim had been waived by defense counsel's admission at sentencing that no such credit was available to petitioner, because he was already on parole at the time. The court went on to reaffirm, as a matter of Michigan law, that counsel's concession was indeed correct: the time spent in detention would be credited to the preexisting sentence and not to the new, consecutive sentence.

Habeas corpus relief is available to a state prisoner only on the ground that he is in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuyre*, 502 U.S. 62, 67 (1991). Petitioner's claim for credit against his sentence arises purely under state law and involves no federal right. Petitioner has therefore failed to state a claim for habeas corpus relief. In any event, the Michigan Court of Appeals was clearly right as a matter of then existing state law, as a parolee who was convicted on a new offense was not entitled to credit for time spent in jail. That time must be applied to the preexisting sentence for which he was on parole. *See People v. Seiders*, 686 N.W.2d 821 (Mich. Ct. App. 2004). After the Court of Appeals issued its decision in the present case, the Michigan Supreme Court reaffirmed this result. *See People v. Idziak*, 773 N.W.2d 616 (Mich. 2009). Consequently, petitioner's present claim is inarguable, even as a matter of state law.

**Recommended Disposition**

For the foregoing reasons, I recommend that petitioner's habeas corpus petition be denied on its merits and that a certificate of appealability be denied, because jurists of reason would not disagree with this result. *See* 28 U.S.C. § 2253(c)(1)(A); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).


Dated: December 23, 2013              /s/ Joseph G. Scoville
                                      United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).